**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 25, 2012**

# In the Court of Appeals of Georgia

A12A1401. AMIN v. THE STATE.

BARNES, Presiding Judge.

Mahir Assad Amin appeals his conviction for possession of cathinone, a Schedule I substance, in violation of the Georgia Controlled Substance Act, OCGA § 16-13-25 (3) (GA. APP.) . Amin contends, among other things, that the State did not present sufficient evidence of intent to find him guilty of the crime. For the reasons discussed below, we agree and reverse.

When reviewing a challenge to the sufficiency of the evidence used to support a conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for

a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Arroyo v. State*, 309 Ga. App. 494 (711SE2d 60) (2011); see *Jackson v. Virginia*, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Amin was jointly tried with another man, Abdihakim Mohamed, who was also charged with possession of cathinine. Mohamed's conviction has already been reversed on appeal because the evidence against him was insufficient. *Mohamed v. State*, 314 Ga. App. 181 (723 SE2d 694) (2012), cert. denied, *State v. Mohamed*, Case No. S12C1038 (Decided June 18, 2012). As described in *Mohamed*, the facts presented at trial showed that a courier service security manager suspected that two packages shipped from Kenya to the Netherlands to Georgia contained illicit material. A supervisor opened the packages and found plant material, which a Clayton County Narcotics Unit officer subsequently identified as "khat." When Mohamed and Amin arrived separately, each to claim a package, they were arrested and charged with possession of cathinone.

Freshly cut khat, a shrub "grown in the horn of Africa and the Arabian Peninsula," contains the chemical cathinone, which is a Schedule I "hallucinogenic

2

substance." OCGA §§ 16-13-25 (3) (GA. APP.); *Pennsylvania v. Mohamud,* 15 A3d 80, 84 (Pa. Super. Ct.) (2010). The cathinone in khat degrades over time into the milder stimulant cathine. Id. While cathine is a also a controlled substance, described in our statute as imparting either a stimulant, a depressant, or a hallucinogenic effect," OCGA § 16-13-28 (a), neither Amin nor Mohamed was charged with cathine possession.

After a bench trial, Amin and Mohamed were convicted.[1] We reversed Mohamed's conviction because the evidence was insufficient. *Mohamed,* 314 Ga. App. 181. Amin argues on appeal, as did Mohamed, that the State presented insufficient evidence that he intended to possess cathinone.

At trial, Mohamed testified that he was born in Somalia, where khat is legal and widely used, including at weddings and other parties. He further explained that it darkens within three or four days after harvesting, and that Somalians do not ingest it for "two days, three days, fives days" to wait "for the chemicals to go out" so it is not too strong. He further testified that it took three to five days for khat to arrive from Africa to the United States, by which time "the strong chemicals are gone."

---

[1]Amin was also convicted of possession less than an ounce of marijuana, but does not contest that conviction on appeal.

3

According to Mohamed, the khat at issue here was grown in Meru, Kenya, driven approximately 400 kilometers to the Nairobi airport, shipped to the Netherlands by air, and then shipped to Ohio before finally arriving in Atlanta. The evidence showed that the packages originated in Kenya on March 2, 2009, traveled through Rotterdam, Netherlands, and arrived in Atlanta on March 4, 2009.

Possession of a controlled substance is not a strict liability offense. Rather, "the criminal intent required by OCGA § 16-13-30 (a) … is intent to possess a drug with knowledge of the chemical identity of that drug." *Duvall v. State*, 289 Ga. 540 (712 SE2d 850) (2011) (evidence defendant believed that controlled substance he possessed was over-the-counter medication was insufficient to prove intent). In *Mohamed*, we held that, while the evidence was sufficient to establish that the defendant possessed khat, it was insufficient to prove he "intended to possess khat with knowledge that it contained cathinone, which was the controlled substance specified in the accusation." 314 Ga. App. at 183-184 (1).

Although Amin told an investigating officer that chewing khat "gave you a high feeling," he did not define "high." Both cathinone and cathine are described by statute as hallucinogens, but only cathine is described as a stimulant. There is no evidence that Amin's "high feeling" described the result of chewing freshly-harvested

4

khat containing cathinone rather than older khat in which the cathinone had degraded to cathine. This khat had been in transit for at least four days, and while a state crime lab chemist who tested the khat in September 2009 concluded that neither cathinone nor cathine were detectable by sight, although scientific testing revealed detectable amounts of both substances. The chemist did not measure the quantity of either substance within the sample tested, and could not describe the difference in effect on a person ingesting either cathinone or cathine.

The evidence against Amin was not significantly different from the evidence against Mohamed, and was therefore also insufficient to prove that Amin knew he was in possession of cathinone. Accordingly, the conviction is reversed.

2. Our conclusion in Division 1 renders moot Amin's other enumeration of error.

*Judgment reversed. Adams and McFadden, JJ., concur.*

5